DAVID BROWN, PLAINTIFF IN ERROR, v. STREET LIGHTING DISTRICT NO. 1, IN THE TOWNSHIP OF WOODBRIDGE, ET AL., DEFENDANTS IN ERROR.

Argued March 4, 1904—Decided June 20, 1904.

In a street lighting district organized under the act of 1894, as amended in 1896 (*Pamph. L.* 1894, *p.* 540; *Gen. Stat., p.* 3669; *Pamph. L.* 1896, *p.* 132), the annual meeting of the legal voters prescribed by section 2 of the act is a general election whose time, place and purpose are fixed by the statute. The requirement of public notice to be given by the township clerk is directory, and failure to give it will not invalidate the election, where the will of the people has been fairly expressed.

On error to the Supreme Court. The opinion of that court is reported in 40 *Vroom* 485.

For the plaintiff in error, *Neilson Abeel.*

For the defendants in error, *Malcolm MacLear* and *J. H. Thayer Martin, Jr.*

The opinion of the court was delivered by

PITNEY, J. This was a *certiorari* to review a resolution adopted by the voters of a street lighting district at an election held June 2d, 1903, appropriating $3,000 for street lighting purposes for the ensuing year. It was heard by Mr. Justice Fort, sitting alone for the Supreme Court, and resulted in a dismissal of the writ.

The lighting district was organized under the act of 1894, as amended in 1896 (*Pamph. L.* 1894, *p.* 540; *Gen. Stat., p.* 3669; *Pamph. L.* 1896, *p.* 132), whose constitutionality was upheld by this court in *Allison* v. *Corker,* 38 *Vroom* 596.

Section 2 of that act provides that on the first Tuesday of June in each year the legal voters of the district are authorized to meet for the purpose of electing three commissioners of the district, "and at said time the said legal voters shall determine by ballot, by the vote of the majority of those present and voting, the sum of money to be raised and expended within such district for the ensuing year for the erection and maintenance of street lights; the said meeting for the election of said commissioners and the determination of said sum to be raised shall be held at such public place within the district as the said township committee may designate, and notice of said time and place of such election shall be given by the township clerk and set up in at least three of the most public places within the said district ten days before the said election; that the polls on said election shall be open at ——— o'clock in the afternoon and close at seven o'clock in the evening."

In the case before us the township committee did not designate the place of voting until May 29th, and at the same time they fixed four o'clock in the afternoon as the hour for the opening of the polls. Notices of the election were set up by the township clerk on May 30th, only three days before the election. The election was participated in by two hundred and ten voters; the appropriation of $3,000 received one hundred and fifty votes, sixty votes being cast in favor of an appropriation of $2,500. Commissioners were

chosen at the same time.    Justice Fort found, as a matter of
fact, that there was a very full vote at the election, a greater
number than usual voting.

The argument for reversal is rested solely on the failure
of the township clerk to set up the election notice ten days
in advance, it being insisted that this statutory provision is
mandatory, so that in the absence of literal compliance
therewith the election is void, notwithstanding it resulted in
a full and fair expression of the will of the voters.    In
support of this contention the following cases are cited:
*State* v. *Van Winkle*, 1 *Dutcher* 73; *State* v. *Hardcastle, 2
Id.* 143; *State* v. *Garrabrant, 3 Vroom* 444; *Davis* v. *Rapp,*
14 *Id.* 594; *Morgan* v. *Gloucester City*, 15 *Id.* 137; *Apgar*
v. *Van Syckel,* 17 *Id.* 492; *Canda Manufacturing Co.* v.
*Woodbridge, 29 Id.* 134.

But these decisions are not in point.    The cases in 1 and
2 *Dutcher* and 3 *Vroom* related to elections held under the
eleventh section of an act of 1851, relating to public schools.
*Pamph. L., p.* 270.    That section provided for a special
meeting of the inhabitants of the school district to be called
by the trustees at a time and place designated by them, on
ten days' public notice to the inhabitants.    It was held that
notice in strict conformity with the act, and duly set up
during the statutory period, was essential to the legal validity
of the proceedings.    Davis *v.* Rapp was to the same effect,
although the statute under which the election there in ques-
tion proceeded is not mentioned in the report of the case.
Morgan *v.* Gloucester City likewise related to a special elec-
tion called for the purpose of submitting to the people a
proposition to erect municipal water works.    Apgar *v.* Van
Syckel related to a special school tax levied under section 39,
paragraph 11, of the revised School law of 1874 (*Rev.* 1877,
*p.* 1077), which required that the special meeting should be
called on ten days' notice, specifying, among other things,
the object of the meeting, and declared that no business should
be transacted except such as had been set forth in the notice.
Canda Manufacturing Co. *v.* Woodbridge arose under the

same act and was decided on similar grounds. All these cases related to special elections, of which the voters could have no notice unless that prescribed by the statute was given.

The case before us relates to an election that is required by law to be held in every street lighting district at a fixed date annually for the purpose of electing officers and voting appropriations. It is quite analogous to the annual township meetings and to other public elections that occur upon fixed dates. The act itself prescribes the date of the meeting, and prescribes with such certainty as the legislature thought necessary the hours during which the polls shall be open. It prescribes the place of the meeting to the extent of requiring that it be held at some public place within the district.

The rule to be derived from a review of the authorities is that where the time, place and purpose of an election are fixed by public law, all voters must take notice thereof, and such an election, if held, is not invalid because no special notice was given nor proclamation made; certainly not if it appear that there has been a fair expression of the will of the voters. Special notice, where prescribed by statute, is intended for the purpose of greater publicity; but the right to hold the election comes from the statute and not from the official notice. *Cooley Const. Lim.* *603; *McCrary Elect.* (*3d ed.*), §§ 142, 150; *Naar Suff. Elect.* 151, 155; 10 *Am. & Eng. Encycl. L.* (*2d ed.*), tit. "*Elections,*" 625.

Cases of some nicety occasionally arise where the time, place and general purpose of an election are fixed by law, but the fact that a particular vacancy is to be filled at that election is not generally known. Thus in *Bolton* v. *Good,* 12 *Vroom* 296, at an annual municipal election, held in the city of Plainfield, twenty-six voters out of a total of over eight hundred voted for a candidate for the office of city judge on the theory that a vacancy existed. It was a doubtful question of law whether there was a vacancy, and it clearly appeared that the voters generally proceeded on the assumption that there was no vacancy to be filled. The notice of election mentioned the officers to be chosen but gave no intimation

that a city judge would be elected. The Supreme Court, in its discretion, denied the application of the candidate who received twenty-six votes for leave to file an information in the nature of a *quo warranto*. On the other hand, in *Winters* v. *Warmolls, ante p.* 615, where a vacancy was to be filled in the office of alderman in one of the wards of Paterson, and the case showed that there was a full and fair expression of the voters upon candidates named to fill the vacancy, the Supreme Court held that the results of the election could not be ignored by reason of the failure of the city clerk to mention in the notice of the election that this office was to be filled.

In *Lane* v. *Otis*, 39 *Vroom* 656, where the borough clerk selected and advertised a polling-place located outside of the borough, this court held that the requirements of the Election law, which were thus violated, were directory, and that where no fraud or other harm was shown the failure to observe those requirements did not vitiate the election.

We think the present case is to be governed by the rule that applies generally to elections whose time, place and purpose are fixed by public law. A contrary finding would be most mischievous in its results. The annual district meeting is the only opportunity presented for the voters of the district to lay a tax for the purpose of lighting the streets during the ensuing fiscal year. It is not to be presumed that the legislature intended that the entire scheme of the act might be nullified by the neglect of the township clerk to set up the prescribed notices in due season. All voters of the district are presumed to know the time and place of the meeting as well as its purpose. It is true that it requires action by the township committee to designate at what particular place within the district the meeting is to be held. But the law requires that it shall be at some public place, and even were no notice of the particular place given in advance, it is not to be presumed, in the absence of evidence, that voters going abroad in the district upon election day seeking the polling-place would long remain in ignorance of its location. With regard to all

public elections, the duty is necessarily imposed upon some official or officials to select a polling-place and provide the election machinery. Notice of the polling-place is ordinarily required to be published in advance. *Pamph. L.* 1898, *p.* 239, §§ 7, 8; *Pamph. L.* 1899, *p.* 373, § 3. Of course, if the officers who are charged with such duties omit to perform them, so that no place is furnished and no election machinery provided, it may be difficult for the voters to express their will in the manner prescribed by the law. And so the failure to give the statutory notice might, in a given instance, result in a general abstinence from voting. Where from such causes as these the will of the people is defeated, or is prevented from being fairly expressed, the courts do not hesitate to set elections aside. But the present case has no such features. The question here is whether, in face of the fact that the will of the people has been fairly expressed, the election must be held void by reason of the mere failure to give in due season the statutory notice. In our view, in this as in all cases of stated public elections, the requirement of notice is directory, intended to insure that knowledge of the approaching event shall be brought home to all the voters, but not essential to the validity of the election.

The judgment of the Supreme Court will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 11.

*For reversal*—None.